Grover, J.
 

 The plaintiff is not the owner of any land lying within 140 feet, or thereabouts, from the railroad crossing, Biver street; but he is the owner of land situate upon that street which the referee finds, in substance, is somewhat impaired in its rental and other value, by being made somewhat more difficult of access by trains running across the street, although the track when cars are not running or standing thereon, is not materially injurious. This is such an interest as authorises the plaintiff to maintain an action for the purpose of restraining the defendants from running the cars across the street, and compelling them to remove the track if unlawfully placed in the street.
 
 (Corning and others
 
 v.
 
 Lawson,
 
 6 Johns. Ch., 439;
 
 Davis and others
 
 v.
 
 The Mayor,
 
 14 N. Y., 506 ;
 
 Milhau
 
 v.
 
 Sharp, 21
 
 id., 611.) It is somewhat difficult to see upon what ground the action can be maintained against the defendants, Blackmar and Baxter, as
 
 *154
 
 it is not found that they had anything to do with the construction of the track, nor that they have maintained or run cars thereon, except as they have paid the defendant, the Grand Trunk Bailroad Company and the B. T. Central Company, to transport grain to and from the elevator, of which they are lessees, in cars run by these companies on the track crossing the street. But the conclusion at which I have arrived upon the question, as to whether the track was lawfully placed and has been so maintained and operated across the street, renders a further consideration of this question unnecessary. The facts found by the referee show that if the track was laid across che street and cars run thereon without lawful authority, it was a nuisance, and that the plaintiff sustained such an injury therefrom peculiar to himself as to enable him to maintain an action for its abatement. The question so far as the Grand Trunk railroad is concerned, is whether the track was lawfully laid and operated across the street. Section 18 of title 3 of the charter of the city of Buffalo, Laws of 1853, 463, provides, that the common council shall have power by a vote of two-thirds of the members elected, whenever in its opinion public convenience requires it, to permit the track of any railroad to be laid along or across any street or public ground, subject however, to the same claim and compensation for damages to the owners or lessees of adjoining property, which is allowed under the general railroad law to owners and lessees of land crossed by railroad tracks, and to regulate or prohibit the use of locomotive engines and of steam, and to regulate other motive power on any portion of any railroad within the city, and to prescribe and regulate the speed of cars upon any and every part of any such railroad, and to require all railroad companies to erect and maintain a suitable and proper passenger depot at the termination of their railroad, and to enact ordinances in pursuance of the powers hereby granted, imposing a penalty of not more than $150 upon the proprietors or corporations owning any Such railroad, or their servants, for each and every violation of any such ordinance. This section delegates to
 
 *155
 
 the common council full power to authorize the laying of railroad tracks in, along or across the streets of the city. The complaint alleges that the defendant, the Grand Trunk Railway Company, is a foreign corporation, duly authorized to transact business as a railway company within the State of Hew York; that sometime in the year 1860 the owners of the elevator, of which the defendants Blackmar and Baxter were lessees at the time of the commencement of the action, being desirous of having a branch railroad track con-' necting the elevator with the track of the Row York Central, applied, in connection with the defendant, the said railway company, to the common council of the city of Buffalo
 
 for
 
 authority to lay such branch track across River street. These facts were not denied by the answer, and for the purposes of the action must be assumed to have been true. The referee found that on the 11th day of April, 1864, the common council of the said city of Buffalo unanimously adopted a resolution whereby they do grant permission and authority, as far as they have the power to make such grant, to the owner or owners of the Exchange elevator (the elevator in question) to lay a single track of railroad to the Buffalo and Lake Huron railway (now Grand Trunk), describing particularly the location, elevation and mode of construction, in accordance with a plan then on file in the office of the clerk of the said city, and providing that the same should be done under the direction of the city surveyor, and be subject to the further orders of the common council, and imposing certain conditions as to replacing the pavement and keeping the same in good condition. Under this authority the track was laid and has since been operated by the Grand Trunk and Rew York Central; the two companies doing a rather extensive business thereon in the transportation of grain to and from the elevator—water, lime, cement and lumber. What the counsel urges in regard to the expense incurred in raising the grade of River street, pursuant to the order of the common council, has no bearing upon the present question. If there was fraud or other irregularity in
 
 *156
 
 procuring that order, a remedy must he sought in some proceeding proper for its review. The counsel for the appellant insists, that the common council had no power to authorize the streets of the city to be crossed by a railroad track for the benefit of private property, or its owners. Be that as it may, it is not this case. The case shows that a very considerable business, as common carriers for a great number of persons, is carried on over this road, both by the Grand Trunk and New York Central. The counsel is right in his proposition that a railroad in the public highway is a burden or obstruction, and no form or mode by which the easement the public have in highways can be legally enjoyed. This would entitle the plaintiff to a judgment restraining the defendant, the Grand Trunk, from this use of the street, but for the permission given by the common council so to use it, pursuant to the authority conferred by section 18,
 
 supra.
 
 The counsel further insists that the permission given by the common council is void for the reason that it does not contain a provision for compensating the owners of the land taken for the track. The permission has nothing to do with that question. Such provision is made by section 18, making applicable the provisions of the general railroad law for this purpose.' The counsel also insists that the common council are invested with control of the streets, as trustees for the public, and have no power to divert them to purposes inconsistent with the public easement therein, and cites
 
 Milhau
 
 v.
 
 Sharp
 
 (27 N. Y., 611), in support of his position. The answer to this is that the trust is enlarged by section 18, which expressly authorizes the council to permit the use of the streets of the city for railroad purposes, when, in its judgment, such use is required for the public convenience. There was no finding by the referee of any fraud violating the permission given by the common council, nor any evidence given requiring _ such a finding. The track is not private, but must be regarded as a branch track of the New York Central and Grand Trunk; and the fact that the elevator, in the transaction of its extensive business, is greatly
 
 *157
 
 benefited, or that its owners contributed largely to the expense of laying the tracks does not show it to be private. These views show that there was no error committed by the referee in rejecting the evidence offered by the plaintiff as it was wholly immaterial. The judgment appealed from must be affirmed with costs.
 

 All concur.
 

 Judgment affirmed.